IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALFRED RONNIE HARRELL,

                    Plaintiff,                      OPINION and ORDER

          v.                                08-cv-609-bbc

DR. DALIA SULIENE and
LORI ALSUM,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      The question in this prisoner civil rights case is whether defendants Dalia Suliene and

Lori Alsum violated plaintiff Alfred Ronnie Harrell's Eighth Amendment rights by failing to

authorize surgery on his knee.  Because I conclude that plaintiff has failed to adduce

evidence that he needs this surgery, I will grant defendants' motion for summary judgment.

      From the parties' proposed findings of fact, I find that the following facts are

undisputed.

UNDISPUTED FACTS

      Plaintiff Alfred Harrell is incarcerated at the Columbia Correctional Institution in

Portage, Wisconsin.  Defendant Dalia Suliene is a doctor at the prison.  Defendant Lori

1

Alsum is the health services manager.  Alsum is not a physician and cannot request surgical procedures for a prisoner.

In June 2007, prison staff transported plaintiff to Mercy Hospital in Oshkosh, Wisconsin for a "recommendation plan of care" for plaintiff's complaints of knee pain.  After examining plaintiff, the attending physician completed an "Off Site Consultation Request and Report."  The doctor made a finding of osteoarthritis in the right knee and tendinitis in the left knee.  Under the heading "Treatment/Procedures You Recommend Us to do or Arrange for," the doctor prescribed Tylenol and ibuprofen.  The doctor did not identify a surgical procedure.  However, under the heading "IF YOU ARE RECOMMENDING SURGERY OR A PROCEDURE, INDICATE CLASSIFICATION," the doctor checked the box next to "III-A."  On the back of the form, Class III conditions are defined as "Non-Urgent—Medically Accepted" (Class II conditions are defined as "Urgent Care—Presently Medically Necessary; Class I conditions  are "Emergency Care—Medically Mandatory" and Class IV conditions are "Elective Non-Covered Care Services—Convenience of Offender.")

Plaintiff was transferred to Columbia Correctional Institution in April 2008.  (Neither side says where plaintiff was housed before his transfer to Columbia.)  On May 19, a nurse saw plaintiff for complaints of "dry feet."  During the exam, plaintiff asked why he still did not have a knee brace.  In addition, plaintiff told the nurse about his visit to Mercy Hospital in June 2007.  (The parties dispute the content of that discussion, but none of them submits

2

admissible evidence in support of their view.  Defendants cite an affidavit by Suliene, who does not have personal knowledge of the discussion; plaintiff cites his own affidavit, but the paragraph he cites includes no information about his conversation with the nurse.)

Defendant Suliene saw plaintiff for knee pain on May 28, 2008.  Plaintiff complained that "property personnel" were refusing to give him his knee sleeve.  Suliene diagnosed degenerative joint disease in plaintiff's left knee and L5 radiculopathy below his right knee. She ordered a knee sleeve for six months, x-rays of the left knee and prescribed ibuprofen for six months.  The x-rays showed a "possible small joint effusion," but no fractures or dislocations.

Defendant Suliene had a followup visit with plaintiff on June 25, 2008.  Plaintiff was wearing his knee sleeve, but said he had not received any ibuprofen yet.  (Defendant Suliene avers that plaintiff refused a steroid injection; plaintiff denies that she offered him one, despite the allegation in his complaint that "[o]n June 25, 2008 . . . the plaintiff was not interested in taking steroid injections.")  Suliene examined plaintiff's knee and noted no infusion, but plaintiff complained of increased tenderness in the medial tibial plateau area. Suliene provided plaintiff with ibuprofen directly and planned a followup a month later.

On July 25, 2008, defendant Suliene saw plaintiff again.  Plaintiff was wearing his knee sleeve, but he had not been taking ibuprofen on a regular basis.  Plaintiff told Suliene that he was not taking the ibuprofen "because it was beginning to hurt his stomach."

Plaintiff believed that Suliene should order a "medical snack bag" for him so that he could take his medication with food.  Suliene discontinued the ibuprofen and substituted glucosamine.

On November 28, 2008 defendant Suliene prescribed ibuprofen for plaintiff along with the glucosamine he was already taking.  (Neither side proposes any facts regarding the reason Suliene did this or the state of plaintiff's condition between July 25, 2008 and November 28, 2008.)  On December 11, 2008, Suliene saw plaintiff for complaints of pain in both knees.  She gave him an injection of Depemedrol and Xylocaine and ordered a physical therapy evaluation, which he began on December 22.

On January 16, 2009, plaintiff received a cane to help him walk.  On January 29, 2009, plaintiff came to defendant Suliene again with complaints of pain in his right knee. Suliene observed that the right knee was "bony" but free of effusion and that the left knee had a posterior bulge.  (The parties dispute whether Suliene observed that it was a "Baker's cyst.")  Suliene advised plaintiff to continue with his course of treatment.

On February 3, defendant Suliene ordered more x-rays because of plaintiff's complaints of increased pain.  The x-rays "showed that the knee joint is in alignment, but there was narrowing of the joint space due to modest degenerative changes. There was modest degenerative spurring involving tibial spine and femoral condyles. No fractures or dislocation or joint effusion was seen."  Dfts.' PFOF ¶54, dkt. #34.  In a follow up visit on

4

March 16, defendant Suliene noted no increase in effusion or any other aspect of plaintiff's condition.

OPINION

Plaintiff's complaint includes a single claim: defendants violated his Eighth Amendment rights by failing to authorize surgery for his knee. A prison official may violate a prisoner's right to medical care if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006). The condition does not have to be life threatening. Id. A medical need may be serious if it "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), if it causes significant pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials are that the prisoner needs medical treatment, but are disregarding the risk by failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).

Thus, under this standard, plaintiff's claim has three elements:

5

(1) Does plaintiff need medical treatment?

(2) Do defendants know that plaintiff needed treatment?

(3) Despite their awareness of the need, are defendants failing to take reasonable measures to provide the necessary treatment?

Plaintiff has not satisfied these elements.  With respect to defendant Alsum, it is undisputed that she does not make decisions regarding surgery.  She cannot be held liable for a decision she did not make (or was even aware of), even if he she has some authority over defendant Suliene as health services manager.  "Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise."  Burks v. Raemisch, 555 F.3d 592, 593-94 (7th Cir. 2009).

With respect to defendant Suliene, plaintiff has failed to show that she disregarded a serious medical need for surgery because he has failed to show that he needs surgery or even that it would be beneficial for him.  He attempts to make this showing through a form prepared by a doctor who examined plaintiff at Mercy Hospital in 2007, almost a year before plaintiff first complained to Suliene about knee problems.  In particular, plaintiff points out that the doctor checked a box under the heading "IF YOU ARE RECOMMENDING SURGERY OR A PROCEDURE, INDICATE CLASSIFICATION."

This one mark is far too ambiguous to show that a failure to perform surgery would amount to deliberate indifference to plaintiff's serious medical needs.  First, nothing else on

6

the form suggests that the doctor at Mercy Hospital believed that surgery is required.  Under the heading "Treatment/Procedures You Recommend Us to do or Arrange for," the doctor did not identify any surgical procedures, he simply prescribed Tylenol and ibuprofen.

Second, even if it were reasonable to infer that the doctor checked the box intentionally, this would not be enough to show that defendant Suliene violated plaintiff's rights by failing to order surgery.  To begin with, it is not clear whether Suliene even knew about this form.  Plaintiff had the consultation with the other doctor while he was at another prison; the parties' proposed findings of fact do not address the questions whether Suliene reviewed the form or plaintiff told her about it.  If Suliene had reviewed the form, it is not clear what she could do with it.  To the extent the other doctor believed that surgery was appropriate, he or she did not explain that conclusion or specify the type of surgery that was required.  Compare Gil v. Reed,  381 F.3d 649, 664 (7th Cir. 2004) (concluding that reasonable jury could find deliberate indifference when prison doctor failed to follow specific instructions of specialist).

Plaintiff attempts to fill in the gaps left by the form with an alleged conversation that he had with the other doctor.  Unfortunately, that conversation is inadmissible because it is hearsay, which means it is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Such statements are inadmissible because of their inherent

7

unreliability and because it is impossible for the other party to challenge the statement of witness who is not present to testify.  If plaintiff wanted to rely on the opinions of the other doctor in support of his motion for summary judgment, he needed to obtain an affidavit from the doctor.

Although defendant Suliene has not determined that plaintiff needs surgery, she has treated him consistently since he first complained to her, attempting to alleviate his pain through a mix of drug regimens and physical therapy.  Plaintiff may not be pain free, but he cannot say that this is a result of Suliene's disregard for his health or that her decisions regarding treatment are "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" his condition. Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotations omitted).

In the affidavit plaintiff submitted in opposition to defendants' motion for summary judgment, he complains about delays in receiving his knee sleeve and a failure to treat a lump on his left knee.  I cannot consider these issues because plaintiff did not include them in his complaint and I did not grant him leave to proceed on either claim, which means that they are outside the scope of this lawsuit.  Second, with respect to the alleged lack of treatment for his lump, plaintiff did not discuss this issue in his proposed findings of fact, something that parties must do if they wish to preserve an issue.  Helpful Tips for Filing a Summary Judgment, Nos. 1 and 2, attached to Preliminary Pretrial Conference Order, dkt. #18 ("All

8

facts necessary to sustain a party's position on a motion for summary judgment must be explicitly proposed as findings of fact. . . . Even if there is evidence in the record to support your position on summary judgment, if you do not propose a finding of fact with the proper citation, the court will not consider that evidence when deciding the motion.") Finally, with respect to the knee sleeve, plaintiff adduces no evidence that either defendant was responsible for any delay.  If plaintiff believes that defendants or anyone else is violating his rights through actions or inactions outside this case, he will have to file a new lawsuit to seek redress for those matters.

### ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Dalia Suliene and Lori Alsum, dkt. #29, is GRANTED.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 27th day of July, 2009.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge